IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SHANE LUNCEFORD, | Case No. 3:22-cv-1387-SI |
| Plaintiff, | **ORDER** |
| v. | |
| JEFFREY R. CARSON, CHRISTEN CARSON, and CARSON KUSTOMS, LLC, | |
| Defendants. | |

Douglas M. Bragg & Frederick M. Millard, MILLARD & BRAGG PC, 419 Fifth St., Oregon City, OR 97045. Of Attorneys for Plaintiff.

**Michael H. Simon, District Judge.**

Plaintiff Shane Lunceford brings this action against Defendants Jeffrey Carson (Mr. Carson), Christen Carson (Ms. Carson), and Carson Kustoms, LLC (Carson Kustoms). Mr. Lunceford alleges that he paid Defendants to restore a 1966 Ford Mustang (Mustang) but that Defendants failed to do so, lied about the status of the restoration, and returned the vehicle in need of significant repairs. The Court entered an order of default as to Defendants. Now before the Court is Mr. Lunceford's motion for entry of default judgment. For the following reasons, the Court grants Mr. Lunceford's motion in part.

**STANDARDS**

Under Federal Rule of Civil Procedure 55(a), the Clerk of the Court is required to enter an order of default if a party against whom affirmative relief is sought fails timely to answer or otherwise defend an action. Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). Upon the entry of default, the Court accepts "the well-pleaded factual allegations" of the complaint "as true." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). The court, however, does not accept as admitted facts that are not well-pleaded, conclusions of law, or facts relating to the amount of damages. *Id.*; *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); *see also Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." (quotation marks omitted)).

After default has been entered against a defendant, a court may enter a default judgment against that defendant. *See* Fed. R. Civ. P. 55(b). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *see also Dreith v. Nu Image, Inc.*, 648 F.3d 779, 786 (9th Cir. 2011) (noting that a district's court decision whether to enter a default judgment is reviewed for abuse of discretion). In *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), the Ninth Circuit set out factors to guide a district court's consideration of whether to enter a default judgment. *See DIRECTV*, 503 F.3d at 852 (noting that *Eitel* "set[] out factors to guide district court's determination regarding the appropriateness of granting a default judgment").

The Ninth Circuit in *Eitel* held:

> Factors which may be considered by courts in exercising discretion
> as to the entry of a default judgment include: (1) the possibility of
> prejudice to the plaintiff, (2) the merits of plaintiff's substantive
> claim, (3) the sufficiency of the complaint, (4) the sum of money at
> stake in the action; (5) the possibility of a dispute concerning
> material facts; (6) whether the default was due to excusable
> neglect, and (7) the strong policy underlying the Federal Rules of
> Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471-72. The "starting point" of the court's analysis, however, "is the general

rule that default judgments are ordinarily disfavored." *Id*. at 1472.

## BACKGROUND

Mr. Carson and Ms. Carson are the sole owners of Carson Kustoms, which operates in

Clackamas County, Oregon. Mr. Lunceford, a resident of California, contracted in early 2017

with Carson Kustoms to perform body work on a 1966 Ford Mustang. Mr. Lunceford paid

Carson Kustoms approximately $15,000 for this work. Defendants possessed the Mustang from

early 2017 until July 5, 2022. Through December 2021, Mr. Carson sent detailed status reports

of the repairs to Mr. Lunceford via text message. Mr. Lunceford alleges and provides evidence to

support that Mr. Carson knew at the time that these representations were false.

Mr. Carson then told Mr. Lunceford that a transport company was hauling the Mustang

from Sacramento, California, to Mr. Lunceford's home on or about December 13, 2021.[1]

Mr. Carson offered repeated explanations for delays in the Mustang's delivery. When the

Mustang had not been delivered by June 13, 2022, Mr. Lunceford contacted the Clackamas

---

[1] Mr. Carson sent Mr. Lunceford a text message on January 27, 2020, stating that
Mr. Carson was "[h]eading to Vegas picking up 3 bikes from mecum auction going to San
Diego . . . Then getting it [the Mustang]. And other parts then north to you." ECF 1 at 10. From
this and subsequent communications from Mr. Carson to Mr. Lunceford, it appears that
Mr. Carson represented that he was dropping off the Mustang at Mr. Lunceford's home as part of
a larger series of pickups and deliveries. *See also id.* at 11-12.

County Sheriff's Office. Defendants told the Sheriff's Office that Mr. Lunceford's Mustang was in fact stored in a facility in Portland and had never left the state of Oregon.

Mr. Lunceford picked up the Mustang on July 5, 2022. Mr. Lunceford then noticed that Defendants had not restored the vehicle: the Mustang was unrepaired, damaged from improper upkeep, missing parts, and deemed unsafe to drive two weeks later by a different automobile body and frame specialist.

Mr. Lunceford brings claims for: (1) breach of contract against Carson Kustoms; (2) violations of Oregon's Unlawful Trade Practices Act (UTPA), Oregon Revised Statutes (ORS) § 646.605, *et seq.*, against Mr. Carson and Carson Kustoms; (3) negligence against all Defendants; (4) a civil violation of the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 USC § 1961, *et seq.*, against all Defendants; and (5) conversion against all Defendants. Defendants failed to timely respond. On December 12, 2022, Mr. Lunceford moved for entry of default (ECF 10), which the Court granted (ECF 11). Mr. Lunceford now moves for entry of default judgment (ECF 13).

## DISCUSSION

### A.  Claims Against Individual Defendants

Mr. Lunceford brings all five of his claims against Carson Kustoms, and also brings several claims against Mr. Carson and Ms. Carson as individuals. In the absence of a well-pleaded allegation of joint conduct or an agency relationship, however, failing to allege specific facts relating to a specific defendant and lumping multiple defendants together is routinely rejected by courts. Allegations are factually deficient when a "complaint lumps defendants together and fails to adequately distinguish claims and alleged wrongs among defendants. . . . Plaintiffs must allege more than generic and conclusory allegations demonstrating that 'Defendants' collectively engaged in [misconduct] and allege with at least some degree of

specificity the acts which each defendant is alleged to have engaged in which support Plaintiff's claims." *McKeon v. Cent. Valley Cmty. Sports Found.*, 2018 WL 6436256, at *4 (E.D. Cal. Dec. 7, 2018) (citing cases). If there are insufficient allegations about the underlying facts relating to an individual defendant, that is a deficiency in the pleading. *See Evans v. Sherman*, 2020 WL 1923176, at *3 (E.D. Cal. Apr. 21, 2020) (noting that the plaintiff "simply lumps all defendants together" and "makes it impossible for the Court to draw the necessary connection between the actions or omissions" of the various defendants).[2]

Mr. Lunceford does not allege that Ms. Carson performed any work for Carson Kustoms, made decisions related to the Mustang, or even knew details of the business's operations. Mr. Lunceford only alleges that Ms. Carson was an owner of Carson Kustoms alongside Mr. Carson. Mr. Lunceford similarly fails to allege that Mr. Carson was involved in this matter in his individual capacity rather than as an agent or employee of Carson Kustoms. Mr. Lunceford states that "Defendant Jeffrey Carson, personally and as an agent for Carson Kustoms, LLC," made false representations. ECF 1 at 8. This conclusory allegation, however, is insufficient to allege personal conduct by Mr. Carson. Accordingly, the Court finds that Mr. Lunceford fails to satisfy the *Eitel* factors concerning the merits of his substantive claims and the sufficiency of his

---

[2] *See also Hamilton v. El Moussa*, 2020 WL 2614625, at *2 (C.D. Cal. Feb. 10, 2020) ("When a plaintiff asserts a [Telephone Consumer Protection Act] claim against multiple defendants, he must differentiate which allegations apply to which defendant—it is not enough to say that a group of defendants violated the statute." (collecting cases)); *Karkanen v. California*, 2018 WL 3820916 at *7 (N.D. Cal. Aug. 10, 2018) (dismissing complaint where "plaintiff repeatedly lumps 'defendants' together in her allegations," because "a complaint which lumps together multiple defendants in one broad allegation fails to satisfy the notice requirement of Rule 8(a)(2)" (citing cases)); *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 908 (N.D. Cal. 2018) ("Plaintiffs must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole." (quotation marks and citation omitted)); *Wright v. City of Santa Cruz*, 2014 WL 5830318, at *5 (N.D. Cal. Nov. 10, 2014) ("These allegations are inadequate because they lump all defendants together and fail to allege the factual basis for each defendant's liability.").

complaint with respect to the involvement of Mr. and Ms. Carson, individually. *Eitel*, 782 F.2d at 1471. Nor does Mr. Lunceford allege or attempt to meet the standard under Oregon law to pierce the corporate veil.[3] The Court thus exercises its discretion and denies Mr. Lunceford's motion with respect to his claims against the individual defendants.

## B.  Breach of Contract

To state a claim for breach of contract in Oregon, Mr. Lunceford "must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach[,] and defendant's breach resulting in damage to plaintiff." *Slover v. Or. State Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 570 (1996) (quotation marks omitted). The Court finds that the factual allegations in the complaint establish these elements against Carson Kustoms. The Court also finds that the *Eitel* factors weigh in favor of entering a default judgment against Carson Kustoms. The Court accepts as true that Carson Kustoms had an obligation to repair and restore the Mustang, properly care for the vehicle during those repairs, and deliver the repaired Mustang.

To obtain a default judgment, Mr. Lunceford must prove his damages. He seeks $53,563.47 in damages against Carson Kustoms for breach of contract. Mr. Lunceford submits

---

[3] The Oregon Supreme Court has explained that to pierce the corporate veil:

> [T]he plaintiff must allege and prove not only that the debtor corporation was under the actual control of the shareholder, but also that the plaintiff's inability to collect from the corporation resulted from some form of improper conduct on the part of the shareholder. . . . The shareholder's alleged control over the corporation must not be only potential but must actually have been exercised in a manner either causing the plaintiff to enter the transaction with the corporation or causing the corporation's default on the transaction or a resulting obligation. Likewise, the shareholder's conduct must have been improper either in relation to the plaintiff's entering the transaction or in preventing or interfering with the corporation's performance or ability to perform its obligations toward the plaintiff.

*Amfac Foods, Inc. v. Int'l Sys. & Control Corp.*, 294 Or. 94, 108-09 (1982).

invoices of parts and repairs that he paid others to replace or undertake after receiving his

Mustang from Defendants. ECF 15 at 5-8. Mr. Lunceford also submits an estimate for further

repairs from a vehicle body and frame specialist in California. *Id.* at 10. Mr. Lunceford calculates

his damages at $53,563.47. The Court finds that Mr. Lunceford has adequately supported breach

of contract damages in this amount from Carson Kustoms.

Mr. Lunceford seeks an additional $266,380.00 in consequential loss of use damages. He

argues that the rental value for comparable vehicles of similar condition in California during this

time was $190.00 per day. Mr. Lunceford also contends that Carson Kustoms should have

delivered the Mustang on or before November 1, 2018, and so was 1,342 days late. The Mustang

required an additional 60 days of repair to be operational. Mr. Lunceford thus asserts that Carson

Kustoms deprived Mr. Lunceford of his Mustang for 1,402 days, at the cost of $266,380.00.

Plaintiffs may recover loss of use damages in Oregon. "[I]n civil cases, the phrase 'loss

of use' is used to describe the damages that result when conduct results in property being

temporary unavailable for use for a limited period of time." *State v. Rasool Islam Islam*, 359

Or. 796, 800 (2016). "Subject to proof, plaintiff is entitled to recover damages to compensate her

for the reasonable time the use of her vehicle was lost." *Graf v. Don Rasmussen Co.*, 39 Or.

App. 311, 316 (1979). "The majority of jurisdictions hold that is it not necessary that plaintiff

actually incur expense in acquiring a substitute in order to recover damages for loss of use

caused by the negligence of the defendant." *Id.* at 317.

Courts have approved several methods for measuring damages for loss of use. *See* 2

Stuart M. Speiser et al., *Am. Law of Torts* § 8:36 (2023). The "rental" method measures "the

amount for which the property in question could have been rented [to others] on the market"; the

"replacement" method calculates loss of use damages as "the cost of hiring a replacement or

substitute item of property on the open market." *Id.* Courts in Oregon appear to apply the "replacement" method for loss of use of some vehicles. *See, e.g.*, *United Engine Parts, Inc. v. Ried*, 283 Or. 421, 432 (1978) (allowing the defendant to recover "[e]ither the reasonable rental value [e.g., cost] of a replacement truck to carry on his business" or, "if rental were not feasible, by net profits his use of the truck would have generated during the period in question"); *Graf*, 39 Or. App. at 317 (allowing the plaintiff to recover the "expense in acquiring a substitute" vehicle).

It is not clear, however, how Oregon courts would calculate loss of use damages for *recreational* automobiles rather than commercial or regular use vehicles. Mr. Lunceford offers no authority to answer this question, and the Court can find none. Applying Mr. Lunceford's proposed calculation, which relies on the daily rental value of a comparable vintage Mustang, could overcompensate Mr. Lunceford for his injury: as other state courts have recognized, loss of use damages for luxury items may not increase in proportion to the higher value of those items. *See, e.g.*, *Fukida v. Hon/Haw. Serv. & Repair*, 97 Haw. 38, 45 (2001) ("Whether plaintiffs rely upon a 1970 Chevy Nova or the newest Rolls Royce for transportation, both are equally inconvenienced by a loss of use of their respective vehicles, and we see no sound reason for permitting the Rolls Royce owner to recover more in 'loss of use' damages for a like period of time than the Chevy Nova owner."). Other state courts also limit loss of use damages for such items to periods when they would have been used by their owners. *See, e.g.*, *Metz v. Soares*, 142 Cal. App. 4th 1250, 1255 (Cal. Ct. App. 2006) ("If plaintiff had not used the [classic] car for a long time before he brought it to defendant, as the evidence showed, then he could not establish that defendant's conduct proximately caused the particular detriment—loss of use—for which he sought damages."); *id.* at 1258 ("The courts [in cases cited by the plaintiff] did not consider whether a defendant may 'deprive' a plaintiff of the use of property *he did not use*. . . . The trial

court correctly instructed the jury that to receive damages for loss of use, plaintiff would have to prove that he lost the use of the Jaguar for a specific period of time due to defendant's fault." (emphasis in original)); *Brooklyn E. Dist. Terminal v. United States*, 287 U.S. 170, 175-76 (1932) ("The owner of the Conqueror would not have let his yacht to any one if there had been no occasion to repair her, nor during the season that she was out of service would he have used her for himself. There was neither interference with profit nor substantial disturbance of enjoyment." (citation omitted)); *W.B. Moses & Sons v. Lockwood*, 295 F. 936, 940 (D.D.C. 1924) ("It is urged that plaintiff is entitled to recover for the entire period during which he was deprived of the car, though there were days or parts of days during which he had no use for it . . . . To give him damages where none would have been caused is not to compensate him for a loss, but to punish the wrongdoer, and this is not permissible . . . . [I]t was incumbent upon [plaintiff] to go further, and show he needed the car, and was prevented from using it by the wrongful detention of it by the defendant.").

Because there is no Oregon Supreme Court decision directly on point, the Court "must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990). After considering the authorities discussed above, the Court concludes that the Oregon Supreme Court would allow a plaintiff to recover loss of use damages for a personal vehicle for the time in which the plaintiff can prove that the vehicle would have been used, and at a reasonable value of a personal vehicle and not a comparable luxury vehicle absent proof that a comparable luxury vehicle was required for a particular use (such as days at a classic car show or parade).

Mr. Lunceford requests loss of use damages in the amount of $266,380.00. This represents every day in which he did not have the vehicle that he contends was delayed and at a replacement value of a comparable Mustang. Mr. Lunceford, however, does not allege or prove how often he would have used the Mustang while Defendants possessed it, the appropriate daily value the Court should award for a reasonable replacement vehicle, or whether he needed a replacement Mustang for any particular purpose. Because the Court has now interpreted the requirements Mr. Lunceford must prove for damages, Mr. Lunceford may file a supplemental motion within 14 days that addresses the deficiencies identified by the Court.

**C. UTPA Claim**

Mr. Lunceford alleges that Carson Kustoms violated the UTPA by misrepresenting that the restoration services to be provided had been completed, misrepresenting the standard or quality of those services, promising to deliver the Mustang within a certain period of time with intent not to do so, and failing to disclose known material defects concurrent with the Mustang's delivery. ORS § 646.608(1)(e), (g), (q), (t).

"Oregon's UTPA, like those of many other jurisdictions, was enacted as a comprehensive statute for the protection of consumers from unlawful trade practices." *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 115 (2015). The UTPA allows that "a person that suffers an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS § 646.608, may bring an individual action in an appropriate court to recover actual damages or statutory damages of $200, whichever is greater." ORS § 646.638(1). Thus, to state a claim under the UTPA, Mr. Lunceford must allege facts showing that Carson Kustoms—acting through Mr. Carson—knew that it made misrepresentations to Mr. Lunceford about the Mustang's restoration and delivery.

The Court finds that Mr. Lunceford's factual allegations suffice to state a claim under the UTPA against Carson Kustoms. The *Eitel* factors weigh in favor of entering default judgment against Carson Kustoms for this claim. The Court accepts as true that Carson Kustoms made representations about its services that it knew were untrue regarding the status and quality of its restoration services on Mr. Lunceford's Mustang, its return of the Mustang to Mr. Lunceford, and material defects concurrent with the Mustang's delivery. Mr. Carson sent Mr. Lunceford text messages that misrepresented the location of the Mustang, what Carson Kustoms had done to repair the Mustang, and the intent of Carson Kustoms timely to return the Mustang to Mr. Lunceford.

Mr. Lunceford must prove his damages. Plaintiffs bringing private UTPA actions "must prove injury in the form of an 'ascertainable loss of money or property.'" *Pearson*, 358 Or. at 117 (quoting ORS § 646.638(1)). "The requirement that the loss be 'ascertainable' connotes generally that it is one 'capable of being discovered, observed, or established.'" *Id.* (quoting *Scott v. W. Int'l Sales, Inc.*, 267 Or. 512, 515 (1973)). Although a plaintiff "is not required to prove the *amount* of ascertainable loss in order to recover nominal damages in a claim for unlawful trade practices, there must, at least, be *some* cognizable loss." *Hedrick v. Spear*, 138 Or. App. 53, 57 (1995) (citation omitted, emphasis in original).

Mr. Lunceford requests the same damages for his UTPA claim as he does for his breach of contract claim, and he provides the same evidence to support these requests. For the reasons stated above, the Court finds that Mr. Lunceford proves some amount of cognizable loss under the UTPA and satisfies the *Eitel* factors with respect to his request for $53,563.47 in damages, but not as to his request for $266,380.00 in loss of use damages. Mr. Lunceford also seeks attorney's fees in an amount to be determined. The UTPA provides that "the court may award

reasonable attorney fees to the prevailing party in an action under this section." ORS
§ 646.638(3). After entry of judgment, the Court will consider any timely motion for attorney's
fees filed by Mr. Lunceford's to determine the amount due for his reasonable attorney's fees.

## D. Negligence

Mr. Lunceford brings a claim of negligence against Defendants for failing properly to
store the Mustang and its parts. As a general matter, "a contract details the specific obligations
that each party agrees to undertake with respect to the other and, if one party fails to meet an
obligation, that breach results in contract liability. That is so whether the breach of contract was
negligent, intentional, or otherwise." *Abraham v. T. Henry Const., Inc.*, 230 Or. App. 564, 568
(2009) (cleaned up). The injured party to a contract may bring a tort claim, however, if he or she
can "allege the breach of a standard of care that is independent of the contract and without
reference to its specific terms." *Id.* (citing *Georgetown Realty v. The Home Ins. Co.*, 313 Or. 97,
106 (1992)). "When a contract expressly or implicitly incorporates the general 'duty' to take
reasonable measures to avoid foreseeable risks, that standard of care is not considered to impose
an independent tort duty." *Id.* at 568 n.2. Actionable independent tort duties arise "when one
party delegates to the other the authority to make important decisions with the understanding that
the authority is to be exercised on behalf of and for the benefit of the authorizer." *Jones v.
Emerald Pac. Homes, Inc.*, 188 Or. App. 471, 478 (2003); *id.* at 477 (listing lawyers, physicians,
architects, trustees, and others as examples of "the kinds of relationships between contracting
parties that can impose extra-contractual obligations").

Mr. Lunceford does not allege that Defendants owed or breached through negligence an
extra-contractual standard of care. Mr. Lunceford also presents no legal authority or factual
argument suggesting that Defendants had a special obligation to store the Mustang and its parts
beyond the reasonable duty imposed by contract. To the contrary, it is likely that the contract's

implied covenant of good faith and fair dealing obligated Carson Kustoms to take reasonable measures to store Mr. Lunceford's vehicle so as to avoid foreseeable weather damage, theft, and other risks.[4] Mr. Lunceford's negligence claim thus does not meet the second and third *Eitel* factors. Accordingly, the Court denies Mr. Lunceford's motion for default judgment with respect to his negligence claim.

**E.    RICO Claim**

Mr. Lunceford alleges that Defendants conspired to commit and did commit fraud in a pattern of racketeering as defined by RICO. 18 USC § 1964(c), (d). As a preliminary matter, "RICO was intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff." *Oscar v. Univ. Students Co-operative Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992), *abrogated on other grounds by Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005). To state a civil claim under RICO, a plaintiff must show that a defendant participated in "(1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt," and this "conduct must be (5) the proximate cause of harm to the victim." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).

Mail and wire fraud, predicate acts under RICO, are "identical except for the particular method used to disseminate the fraud, and contain three elements: (A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific

---

[4] All contracts carry an implied covenant of good faith and fair dealing. *Zygar v. Johnson*, 169 Or. App. 638, 645 (2000). "The law imposes a duty of good faith and fair dealing to facilitate performance and enforcement of the contract when it is consistent with and in furtherance of the agreed-upon terms of the contract, or where it effectuates the parties' objectively reasonable expectations under the contract . . . ." *Morrow v. Red Shield Ins. Co.*, 212 Or. App. 653, 661-62 (2007).

intent to defraud." *Id.* The pattern of racketeering activity constituted by these predicated acts must "pose a threat of continued criminal activity, such as when the illegal conduct is a regular way of conducting a defendant's ongoing legitimate business." *Ticor Title Ins. Co. v. Florida*, 937 F.2d 447, 450 (9th Cir. 1991) (discussing the "continuity" prong of the "pattern of racketeering" element of RICO claims). The heightened standard of Rule 9(b) of the Federal Rules of Civil Procedure also applies to RICO claims alleging predicate acts involving fraud. *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir. 1988).

Mr. Lunceford alleges that all Defendants conspired to engage and did engage in a scheme to defraud Mr. Lunceford by sending him intentionally misleading text messages and emails about the status of the vehicle's repairs. Mr. Lunceford does not allege facts showing that Mr. Carson sent the messages in his personal capacity, however, or that Ms. Carson was involved whatsoever. There are no allegations as to Defendants' "formation of a scheme." Mr. Lunceford also does not allege that there is any threat of continued fraudulent activity. These incomplete and conclusory allegations do not meet the heightened requirements of Rule 9(b) to state a RICO claim. Thus, Mr. Lunceford has not met the *Eitel* factors for his RICO claim.

## F.  Conversion

Mr. Lunceford also brings a claim of conversion against Defendants for failing to return vehicle parts that the Mustang came with or that Mr. Lunceford subsequently provided. In Oregon, "[a]n individual commits the act of conversion when, without the legal right to do so, he or she exercises dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *In re Peterson*, 348 Or. 325, 335 (2010) (quotation marks omitted). To determine whether conversion occurred, courts consider the extent and duration of the actor's exercise of control, the actor's intent and good faith, the extent of the resulting interference of control, the

harm done to the chattel, and the resulting inconvenience and expense. *See Becker v. Pac. Forest Indus., Inc.*, 229 Or. App. 112, 116 (2009) (citing *Restatement (Second) of Torts* § 222A (1965), adopted by *Mustola v. Toddy*, 253 Or. 658, 664 (1969)).

The Court finds that Mr. Lunceford's factual allegations suffice to establish these elements against Carson Kustoms for conversion. The *Eitel* factors weigh in favor of default judgment against Carson Kustoms for this claim. The Court accepts as true that Mr. Lunceford's Mustang was missing parts, including parts that Mr. Lunceford had purchased for Defendants to install, when Mr. Lunceford received his Mustang in 2022. The Court also accepts that Carson Kustoms had control over these parts and caused them not to be returned to Mr. Lunceford.

Mr. Lunceford must prove his damages. "In a conversion action, a plaintiff's economic damages are the reasonable market value of the goods converted at the time and place of conversion plus interest from that point forward." *State v. De Verteuil*, 304 Or. App. 163, 167 (2020). Mr. Lunceford seeks $3,113.00 for this claim.[5] For support, Mr. Lunceford submits an itemization of his vehicle's missing parts provided by an automobile repair shop called Mustang Fever. ECF 15 at 5-6. This evidence is adequate proof of damages for Mr. Lunceford's conversion claim.

## G. Supplemental Filings

Given the Court's disposition of Mr. Lunceford's motion for default judgment, the Court defers entering its judgment to allow Mr. Lunceford the opportunity to file a supplemental motion and evidence. If Mr. Lunceford believes he can cure the deficiencies identified in this Opinion and Order, he may submit the supplemental filings within 14 days.

---

[5] Mr. Lunceford includes this value in his breach of contract and UTPA damages as well.

**CONCLUSION**

The Court GRANTS IN PART and DENIES IN PART Mr. Lunceford's Motion for Default Judgment (ECF 13). The Court grants Mr. Lunceford's motion as to his breach of contract and UTPA claims against Carson Kustoms, except for loss of use damages, and as to his conversion claim against Carson Kustoms. The Court denies Mr. Lunceford's motion as to all claims against Mr. and Ms. Carson, and as to the negligence and RICO claims, without prejudice. Mr. Lunceford is entitled to $53,563.47 in economic damages, reasonable attorney's fees, and prejudgment and post-judgment interest.[6] Mr. Lunceford may submit a supplemental motion within 14 days. The Court defers entering judgment until after the period expires for Mr. Lunceford to submit supplemental briefing.

**IT IS SO ORDERED**.

DATED this 28th day of June, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

[6] Mr. Lunceford requests prejudgment interest on his breach of contract and conversion claims. Oregon law allows for prejudgment interest at nine percent annually on "[m]oney received to the use of another and retained beyond a reasonable time without the owner's express or implied consent." ORS § 82.010(1)(b). "A party sufficiently states a claim for prejudgment interest where a party alleges, in the body of its complaint, 'the exact amount claimed to be due and the dates during which [the] plaintiff claimed it was deprived of the use of its money.'" *Davis v. F.W. Fin. Servs., Inc.*, 260 Or. App. 191, 209 (2013) (quoting *Holman Transfer Co. v. PNB Tel. Co.*, 287 Or. 387, 406 (1979)). Lunceford properly did so here.