Frederick M. Millard, OSB #98295
fmillard@millardlaw.com
Douglas M. Bragg, OSB No. 01211
dbragg@millardlaw.com
419 5th Street
Oregon City, Oregon 97045
Telephone: (503) 305-7806
Facsimile: (503) 387-5315
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SHANE LUNCEFORD**, a citizen of California.<br>　　　　　Plaintiff,<br><br>　　vs.<br><br>**JEFFREY R. CARSON aka JEFF CARSON, CARSON KUSTOMS, LLC and CHRISTEN CARSON,**<br>**Defendants.**<br>　　　　　Defendants. | Case No. 3:22-cv-01387-SI<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEFING IN SUPPORT OF HIS FRCP 55(b) MOTION FOR JUDGMENT OF DEFAULT** |

　　COMES NOW, Plaintiff, Shane Lunceford and files this Supplemental Briefing in Support of his Motion for Judgment by Default, pursuant to FRCP 55(b)(1) and/or (b)(2), and states as follows:

　　Pursuant to the Court's Order dated June 28, 2023. Plaintiff offers this Supplemental Memorandum and the Supplemental Declaration of Shane Lunceford to respond to issues raised by the Court:

Page 1 – PLAINTIFF'S SUPPLEMENTAL
BRIEFING IN SUPPORT OF HIS FRCP 55(b)
MOTION FOR JUDGMENT OF DEFAULT

**Millard & Bragg, Attorneys at Law PC**
419 5TH Street
Oregon City, OR  97045
503-305-7806  Fax 503-387-5315

## MEMORANDUM

*1. Introduction:*

Briefly, this case arises out of Plaintiff, Shane Lunceford, contracting with Defendant Carson Kustoms, LLC ("Carson Kustoms") in 2017 to perform restoration work on his 1966 Ford Mustang ("Mustang"). Plaintiff delivered the Mustang to Carson Kustoms with a payment of $15,000.00. Carson Kustoms represented that the work was completed, and the car could be returned on or before November 1, 2018. However, Defendant failed to deliver the car and refused Plaintiff's request to retrieve the Mustang until July 5, 2022. On July 5, 2022, the car's condition was considerably worse than it had been in 2017, with missing windshield, seats not bolted down, and having clearly been left unprotected in the elements for some time. The Mustang had been seriously damaged due to the acts and omissions of Carson Kustoms. Additionally, parts provided by Plaintiff to be installed, along with parts that had been installed, had gone missing.

Between the dates of January 1, 2018, through June 16, 2022, Plaintiff received multiple updates via text message from Jeffrey Carson. The updates detailed the work that was being performed on the Mustang, the storage of the Mustang, transportation of the Mustang, and the estimated delivery date of the Mustang to Plaintiff's residence. None of these texts were true.

The Court granted in part Plaintiff's Motion for Entry of Default Judgment and the Court invited a supplemental briefing by Plaintiff on the issue of the actual loss of use damages and denied without prejudice Plaintiff's negligence and RICO claims. Plaintiff is submitting additional briefing and evidence in support of the RICO claim and loss of use damages.

*2. Loss of Use Damages:*

In the Court's Order of June 28, 2023, the Court invited comment on the intended or anticipated actual use of the vehicle upon its return in November of 2018 through present. The Court

reasoned that the loss of use damages should be based not on the car being simply sitting in the garage and *available* for use, but for those times when it would be used. While Plaintiff believes that there is a certain value to having the option to use his car at any time, such as to take out a client, or go for a drive on a nice day, Plaintiff recognizes the Court's interest in grounding the Loss of Use damages to a more specific time frame.

Plaintiff expected to use the car on weekends, as well as to allow his teenage children of driving age to be able to use it for special occasions – such as prom, homecoming, and the like. Between the time that the car should have been returned – November 1, 2018 – and the car was actually delivered – July 5, 2022 – Plaintiff missed 192 weekends, and a potential of 576 days (Friday evening through Sunday) usage. In addition, Plaintiff missed approximately 43 weekday Holidays. Plaintiff's children missed approximately 15 special occasions, as well as additional time just driving with dad in grampa's old car. In addition, the car is not functioning today and will not be repaired for some time due to costs, meaning that the loss of use is an ongoing damage.

Of the 619 weekend and holiday days, Plaintiff anticipated using the car about 2/3rds of those days, or 413 days. The children have lost 15 days of use of the vehicle, for a total of 428 days of loss of use.

Plaintiff further provided evidence of the reasonable rental value of the Mustang. The Court indicated in its opinion that the loss of use value should not be based upon necessarily the value of a luxury item when a more reasonable priced option would be available. Order, Docket #__, p. 9. Plaintiff has reviewed rental daily rental rates for "full size cars" or "sporty" cars in and around the San Francisco area where he lives and based upon his personal knowledge of his own property, as well as based upon this further research, testifies in his Supplemental Declaration that the reasonable rental value of a non-Luxury car would be between $172.00 and $183.00 per day. Calculated at the rate of $190.00 per day, Plaintiff supplements his damage to request to $81,320.00 for the loss of use

damages. Supp. Declaration of Shane Lunceford, para 5, and Exhibits thereto.

    *3. Supplemental Briefing on RICO:*

    In the Court's Order it states, "Mr. Lunceford does not allege facts showing that Mr. Carson sent the messages in his personal capacity". Oder, Docket #16, p. 14. Plaintiff respectfully refers the Court to 18 USCA 1962 (c), which states in pertinent part, "It shall be unlawful for any *person employed* by or *associated* with any enterprise … to conduct or participate in, directly or indirectly, in the conduct of the enterprises affairs through a pattern of racketeering activity." (emphasis added). Mr. Carson is a *person* under 18 USC 1961(3) (defining "person" to include "any individual… capable of holding a legal or beneficial interest in property."). It is reasonable to infer from the allegations in the Complaint that both Mr. and Mrs. Carson are persons under 18 USC 1961(3). Complaint, Docket #1, para 2. Plaintiff alleged that both Mr. and Mrs. Carson were either employed by or associated with Carson Kustoms, LLC. *Id*. Carson Kustoms, LLC is an "enterprise" as defined by 18 USC 1961(4) (defining "enterprise" to include "partnership, corporation, association, or other legal entity"). Mrs. Carson, as the co-owner of the business, indirectly benefitted from the deceit by the small business she owned not incurring costs to provide services, maintenance or provide for reasonable storage of the Mustang.

    Indeed, this Court's Opinion notes that "Mr. Lunceford does not allege facts showing that Mr. Carson sent the messages in his personal capacity", and therefore must have been acting as an employee.[1] Opinion, p. 14.

    The Court also observed that there are "no allegations as to Defendants' 'formation of a scheme.'" Opinion, p. 14. Respectfully, Plaintiff alleged the existence of a scheme in paragraph 38.

---

[1] It is not clear that Mr. Carson's conduct would naturally fall within the scope of his role as an employee of Carson Kustoms, LLC.

Page 4 – PLAINTIFF'S SUPPLEMENTAL
BRIEFING IN SUPPORT OF HIS FRCP 55(b)
MOTION FOR JUDGMENT OF DEFAULT

Millard & Bragg, Attorneys at Law PC
419 5TH Street
Oregon City, OR 97045
503-305-7806  Fax 503-387-5315

In *Ticor Title Ins. Co. v. Florida*, 937 F.2d 447, 450 (9th Cir., 1991), the Court of Appeals explained, "To satisfy the continuity prong of the test, one need only show that the predicates pose a threat of continued criminal activity, such as when the illegal conduct is a regular way of conducting a defendant's ongoing legitimate business." (internal quotations omitted). Plaintiff alleged 24 separate texts showing an ongoing pattern of deceit over several years, which given the nature and quantity of texts over an ongoing period of time could reasonably lead to the inference of this being a regular business pattern. However, Plaintiff is also aware of other similar instances of this type of conduct on the part of Defendants and asks the Court to consider taking judicial notice of the Case Detail. Supp. Declaration of Douglas M. Bragg, Exh. 1. Plaintiff anticipated that in discovery, additional evidence would have been developed to further support this prong.

Therefore, based upon the statutory factors, and the requirement of a regular business pattern with a risk of future harm to the public, taking reasonable inferences from the allegations and consideration of at least one other instance of similar conduct, Plaintiff requests that the court reconsider its dismissal of the RICO Claim.

To the extent that personal capacity is required for establishing liability under RICO, Plaintiff respectfully requests the Court to reconsider its position that the Complaint failed to allege sufficient facts to allow at least a reasonable inference that Mr. Carson was acting in his individual capacity.

The Court's Opinion noted a lack of specific allegations relating to the personal liability of the Carsons. Plaintiff respectfully offers the following explanation for his determination that the Complaint was adequately pled in this regard.

The general requirements for pleading are as follows:

> Under federal notice pleading, a complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions. Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

*McKeon v. Cent. Valley Cmty. Sports Found.*, 2018 U.S. Dist. LEXIS 207290, *9.

The Court raised the concern that the Complaint did not adequately allege "that Mr. Carson was involved in this matter", referring to the same concerns that Plaintiff did not allege that "Ms. Carson made decisions related to the Mustang, or even knew details of the business's operations." Order, p. 5. Respectfully, Plaintiff alleged in specific approximately 24 different statements by Mr. Carson containing details regarding the operation of the business, the care of the Mustang, and the status of the work, parts installation, and delivery. Complaint, Docket #1, para 37. These statements by Mr. Carson indicate a significant degree of personal knowledge and involvement in the care and custody of the Mustang, as well as a role in the oversight of the business and knowledge of business operations.

Paragraph 38 alleges that, based upon the closely owned family business, based upon the text messages from Mr. Carson, and the facts and circumstances of the business, that "Upon information and belief, all Defendants conspired together to defraud Plaintiff, and were jointly involved in Defendant Jeff Carson's ongoing efforts to delay return of the Mustang through false and fraudulent pretenses of delivery problems in order to deny Plaintiff of the use of his Mustang, the money he paid in advance for the services, and the honest services which Plaintiff believed he was receiving." Complaint, Docket #1, para 38. Carson Kustoms, LLC contracted to perform services and took possession and control of the Mustang. Carson Kustoms, LLC took the deposit from Mr. Lunceford. Complaint, Docket #1, para 4. Mr. Carson made numerous statements relating to the progress of the work as part of an ongoing effort to delay and defraud Mr. Lunceford. Complaint, Docket #1, para 38. Mrs. Carson was the owner of the business, married to Mr. Carson, and as the only two owners

of a small business, it is reasonable to infer that she received benefit from the deposited funds that were clearly not spent on parts, labor, maintenance or care of the vehicle. Complaint Docket #1, para 2.

To the extent individual liability is necessary – rather than the statutory reference to any employee or someone associated with an enterprise, Plaintiff offers the following:

Considering the Complaint in this light, Plaintiff requests that the Court consider whether the facts support a reasonable inference that the doctrine of respondeat superior should be applied in Mr. Carson's favor. Under the doctrine of respondeat superior, an employer is liable for an employee's tort when the employee acts within the course and scope of employment. *Minnis v. Oregon Mutual Insurance Company,* 162 Or. App. 198, 986 P.2d 77 (Or. Ct. App. 1999), citing *Chesterman v. Barmon,* 305 Ore. 439, 442, 753 P.2d 404 (1988). Three requirements must be met to conclude that an employee acted within the course and scope of employment: (1) the act must be one which occurred substantially within the time and space limits authorized by the employment; (2) the employee must have been motivated, at least partially, by a purpose to serve the employer; and (3) the act must be of a kind which the employee was hired to perform. *Id., citing Stanfield v. Laccoarce,* 284 Ore. 651, 654, 588 P.2d 1271 (1978). Here, reasonable inferences from the facts as alleged support a conclusion that respondeat superior does not apply to the conduct of Mr. Carson, as the last two elements are not met.

Plaintiff acknowledges that Jeffrey Carson's actions meet the first requirement of respondeat superior, as he was (presumably) an employee of Carson Kustoms, the company hired to perform the restoration and storage work.

The second requirement for respondeat superior is that "the employee must have been motivated, at least partially, by a purpose to serve the employer". No reasonable employer would have the motivation to lie, steal, and damage a customer's property. If the "purpose of the

Page 7 – PLAINTIFF'S SUPPLEMENTAL
BRIEFING IN SUPPORT OF HIS FRCP 55(b)
MOTION FOR JUDGMENT OF DEFAULT

Millard & Bragg, Attorneys at Law PC
419 5TH Street
Oregon City, OR  97045
503-305-7806   Fax 503-387-5315

employer" is to serve customers, build a reputation, and develop clientele, that is not served by failing to complete work, lying about progress, losing parts, and destroying through act or omission client property. Based upon the contents of the texts, Jeffrey Carson blatantly lied to Plaintiff via text message over twenty (20) times. The Court observed a lack of evidence available on the involvement of Mrs. Carson. If Mr. Carson engaged in this conduct outside of her knowledge and consent, then he was doing so in his individual capacity.

The third requirement of respondeat superior is that "the act must be of a kind which the employee was hired to perform". Much like in failing the second requirement, it is not reasonable to assume that Carson Kustoms, LLC engaged Mr. Carson for the purpose of lying, stealing, and damaging the equipment of a customer.

Plaintiff therefore requests that the Court reconsider its position on the basis that 1) the RICO statutes do not require actions within an individual capacity for liability to attach; 2) the years long scheme accompanied with the evidence of other instances demonstrates an ongoing scheme to defraud the public; and 3) taking reasonable inferences as to the conduct of Mr. Carson, respondeat superior would not normally shield him from liability.

Dated this 12th day of July 2023

*/s/ Douglas M. Bragg*

Douglas M. Bragg, OSB #012113
dbragg@millardlaw.com
*Of Attorneys for Plaintiff*