IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SHANE LUNCEFORD**, <br><br> Plaintiff, <br><br> v. <br><br> **JEFFREY R. CARSON, CHRISTEN CARSON, and CARSON KUSTOMS, LLC**, <br><br> Defendants. | Case No. 3:22-cv-1387-SI <br><br> **ORDER** |

Douglas M. Bragg & Frederick M. Millard, MILLARD & BRAGG PC, 419 Fifth St., Oregon City, OR 97045. Of Attorneys for Plaintiff.

**Michael H. Simon, District Judge.**

Plaintiff Shane Lunceford (Mr. Lunceford) brings this action against Defendants Jeffrey R. Carson (Mr. Carson), Christen Carson (Ms. Carson), and Carson Kustoms, LLC (Carson Kustoms). Plaintiff alleged that Defendants agreed but failed to repair a classic Ford Mustang, repeatedly misrepresented the status of the restoration work, and ultimately returned Mr. Lunceford's vehicle in poor condition. Defendants did not appear, and the Court entered an order of default on December 14, 2022. ECF 11. Plaintiff then moved for a default judgment, which the Court granted in part and denied in part on June 28, 2023. ECF 16. The Court invited

Mr. Lunceford to file a supplemental motion with additional evidence to cure the deficiencies identified in his motion for default judgment. Plaintiff has since done so. The Court now addresses Plaintiff's supplemental arguments.[1]

**A. Loss of Use Damages**

In his Complaint, Plaintiff requested $266,380.00 in "loss of use" damages to compensate him for the length of time that Defendants held Mr. Lunceford's vehicle without repairing it. Mr. Lunceford calculated this figure by multiplying the daily rental rate for a classic Mustang car of the same vintage ($190) by the number of days that Defendants had possession of the vehicle beyond when Defendants had promised to deliver it (1,342), which equals $254,980, plus an additional 60 days for necessary repairs after Defendants eventually returned Plaintiff's car ($11,400).

The Court initially rejected Plaintiff's request for loss of use damages. Although parties may recover loss of use damages in Oregon, the Court examined relevant caselaw and reliable secondary material and questioned whether Plaintiff's calculations would overcompensate him for his loss. Caselaw on loss of use damages often involves commercial or regular use vehicles. By contrast, Plaintiff seeks to recover for his loss of the occasional use of a recreational vehicle maintained for personal and aesthetic reasons, not the loss of a daily driver.

In his supplemental motion, Plaintiff reduced his request for loss of use damages. He explains that he expected to use his classic car on weekends and for special occasions, and that the Mustang's vintage quality was essential to these uses. Plaintiff adds that he lost the opportunity to offer his car for his teenage children to enjoy for prom. Plaintiff has reduced his

---

[1] The Court's previous Order granting in part and denying in part Mr. Lunceford's motion for default judgment discusses the factual background of this case and the applicable legal standards. *See* ECF 16. There is no need to repeat those statements.

request to 428 days for loss of use, at a daily rental value for a non-luxury "sporty" car in the area in which Plaintiff, for a total of $81,320. In support, Plaintiff submits a declaration as to how often he would have used his Mustang, as well as several daily rental quotes for relevant comparable vehicles. The Court finds that Plaintiff has adequately supported his request for consequential loss of use damages.

## B.  RICO Claim

Plaintiff also alleged in his Complaint that all three Defendants engaged in a scheme to commit wire fraud in violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961, *et seq.* The Court previously found that Plaintiff failed to state this claim against any Defendant and thus denied a default judgment on this claim. Plaintiff has since presented new arguments and evidence in his supplemental brief to support his civil RICO claim, focusing on whether he has sufficiently stated a claim.

### 1.  Whether Default Judgment is Warranted

Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To state a civil RICO claim, a plaintiff thus must show that a defendant participated in "(1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). "In addition, the conduct must be (5) the proximate cause of harm to the victim." *Id.* The Court considers the four statutory elements here.

The pattern of racketeering activity constituted by the alleged predicated acts must "pose a threat of continued criminal activity, such as when the illegal conduct is a regular way of

conducting a defendant's ongoing legitimate business." *Ticor Title Ins. Co. v. Florida*, 937 F.2d 447, 450 (9th Cir. 1991) (discussing the "continuity" prong of the "pattern of racketeering" element of RICO claims). The heightened standard of Rule 9(b) of the Federal Rules of Civil Procedure applies to RICO claims alleging predicate acts involving fraud. *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir. 1988).

The Court has considered Plaintiff's new arguments and evidence presented in his supplemental briefing and agrees that he has adequately demonstrated a civil RICO claim against Mr. Carson and Carson Kustoms.[2] Plaintiff alleged that Mr. Carson is a person as defined by 18 U.S.C. § 1961(3) (defining person as "any individual or entity capable of holding a legal or beneficial interest in property[.]"). Plaintiff also alleged that Mr. Carson is employed by or associated with an enterprise, Carson Kustoms, a limited liability company. 18 U.S.C. § 1961(4) (defining enterprise to include "any individual, partnership, corporation, association, or other legal entity[.]").[3] Mr. Lunceford further alleged that Mr. Carson, as an agent of Carson Kustoms,

---

[2] Because Mr. Lunceford made no allegation and provides no supplemental evidence of any relevant conduct by Ms. Carson, he still fails to support a RICO claim against her.

[3] As the Supreme Court has noted, for RICO purposes "the employee and the corporation are different 'persons,' even where the employee is the corporation's sole owner." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001); *see id.* ("The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. And we can find nothing in the [RICO] statute that requires more 'separateness' than that."); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1534 (9th Cir. 1992) ("[T]he inability of a corporation to operate except through its officers is not an impediment to section 1962(c) suits. That fact poses a problem only when the *corporation* is the named defendant—when it is both the 'person' and the 'enterprise.'" (emphasis in original)); *see also McCullough v. Suter*, 757 F.2d 142, 144 (7th Cir. 1985) ("If the one-man band incorporates, it gets some legal protections from the corporate form, such as limited liability; and it is just this sort of legal shield for illegal activity that RICO tries to pierce."); *United States v. Benny*, 786 F.2d 1410, 1415 (9th Cir. 1986) (citing *McCullough* in discussing when a sole proprietorship could be considered an enterprise distinct from its sole proprietor for RICO purposes).

engaged in a pattern of wire fraud over the course of four and a half years to prevent Plaintiff from regaining possession of his classic vehicle. Plaintiff also introduces evidence to show that this "illegal conduct is a regular way of conducting [a] defendant's ongoing legitimate business," *Ticor*, 937 F.2d at 450 (alteration in original), by showing that other individuals have filed similar suits against Defendants. The Court thus finds that the factual allegations in the complaint and the supplemental evidence establish the elements of a civil RICO claim against two of the three Defendants.

The Court also has considered the remaining *Eitel* factors applicable to motions for default judgment.[4] Plaintiff will be prejudiced if the Court does not enter default judgment on this claim because Defendants' failure to respond to the Complaint leaves Plaintiff with no alternative avenues of redress. The Court discusses the damage amount below, but the sum the Court finds supported is not an excessively large amount. There may be a dispute about material facts, but the Court must accept as true Plaintiff's allegations, and Defendants have not filed a responsive pleading. It is unlikely that the default was due to excusable neglect because Defendants have had ample opportunity to file a responsive pleading. Finally, although public policy disfavors default judgments, judgment on the merits is impossible when Defendants have not appeared. Accordingly, the remaining *Eitel* factors weigh in favor of granting Plaintiff's motion for default judgment with respect to his RICO claim.

---

[4] In *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986), the Ninth Circuit set out factors for a district court to consider before entering a default judgment: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."

**2. Damages**

As alleged in this Complaint, Plaintiff seeks to recover damages to the Mustang, costs to restore its lost and missing parts, and his loss of use damages for his RICO claim. Plaintiff also seeks treble damages and recovery of attorney's fees and costs.

To obtain damages in a civil RICO claim "both proximate and but-for causation" are required. *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co.*, 942 F.3d 1243, 1248 (9th Cir. 2019) (citing *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)). As explained by the Supreme Court, "courts must scrutinize the causal link between the RICO violation and the injury, identifying with precision both the nature of the violation and the cause of the injury to the plaintiff. Where the violation is not itself the immediate cause of the plaintiff's injury, proximate cause may be lacking." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 981 (9th Cir. 2008) (citation omitted). Proximate cause does not exist where the cause of the plaintiff's asserted harms "is a set of actions . . . entirely distinct from the alleged RICO violation." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 456-60 (2006).

Plaintiff does not explain how Mr. Carson's pattern of racketeering activity—sending fraudulent text messages claiming that repairs were underway for nearly five years—was the proximate, or "but-for," cause of the Mustang's injuries or its lost or missing parts. Plaintiff alleges these damages resulted from weather and theft due to negligent storage and poor security. It may be that without Mr. Carson's misleading messages, Carson Kustoms would not have had the opportunity to store Mr. Lunceford's vehicle outdoors with poor security for an extended period. But Mr. Lunceford does not allege that the theft occurred only after Carson Kustoms missed its initial deadline. As to the weather damage, the causal chain is too attenuated to suggest that the wire fraud was the proximate cause of Plaintiff's damages. As in *Canyon County* and *Anza*, Plaintiff's asserted harms—damage to the vehicle—were caused by a set of actions

PAGE 6 – ORDER

(negligent storage) entirely distinct from the alleged RICO violation (fraudulent messages). In other words, had Carson Kustoms engaged in the alleged RICO violation but properly stored the vehicle, the alleged RICO damages would not have occurred. Plaintiff therefore cannot recover the money he paid to Defendants or spent on subsequent repairs for the car under RICO.

That said, Plaintiff has adequately shown that Defendants' acts of wire fraud caused Plaintiff's *loss of use* damages. But for Mr. Carson's repeated fraudulent assurances, Plaintiff would have repossessed his vehicle and regained use of it sooner. Mr. Carson's text messages thus directly caused Plaintiff to leave his vehicle in the care of Carson Kustoms for an extended period, depriving Plaintiff of the opportunity to use his car.

Mr. Lunceford thus may recover treble his $81,320 loss of use damages, plus reasonable costs and fees. 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue . . . and shall recover threefold damages he sustains and the cost of the suit, including a reasonable attorney's fee[.]"). Plaintiff cannot receive treble any other damages caused by Defendant's breach of contract, Unlawful Trade Practice Act violation, or conversion.

**C. Conclusion**

The Court revises its previous Order (ECF 16) and GRANTS IN PART Plaintiff's Motion for Default Judgment (ECF 13) with respect to his RICO claim and request for loss of use damages, as described above. Plaintiff shall prepare a proposed form of judgment and file it with the Court within two weeks from the date of this Order.

**IT IS SO ORDERED**.

DATED this 28th day of July, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge